IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DARRELL RAY SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:15-cv-0071 |
| | ) |
| DAVIDSON COUNTY SHERIFF'S | ) Judge Nixon |
| OFFICE and C.C.S. MEDICAL, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Darrell Ray, Sr., a prisoner currently presently incarcerated at the Davidson County Sheriff's Office in Nashville, Tennessee, has filed a *pro se* complaint under 42 U.S.C. § 1983 against defendants, the Davidson County Sheriff's Office and "C.C.S. Medical. (ECF No. 1.) The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A, 42 U.S.C. § 1997e(c).

I.  **Standard of Review**

Under the PLRA, the Court must conduct an initial review of any civil complaint brought by a prisoner if it is filed *in forma pauperis*, 28 U.S.C. § 1915(e)(2), seeks relief from government entities or officials, 28 U.S.C. § 1915A, or challenges the conditions of confinement, 42 U.S.C. § 1997e(a). Upon conducting this review, the Court must dismiss the complaint, or any portion thereof, that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A; 42 U.S.C. § 1997e(c). In conducting the initial review, the Court must read the plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and

accept the plaintiff's allegations as true unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

## II. Factual Allegations

The plaintiff alleges that his problems with the medical staff at the Davidson County Sheriff's Office began in June 2014 when it was time for his defibrillator/pacemaker to be checked to make sure it was working properly. He states that this has never happened and he is still waiting to have it checked.

In addition, his blood pressure medications were given to him at the wrong times, and his blood pressure readings were very high ("161 over 109 to 169 over 113") (ECF No. 1, at 6). There was a time when he woke up and felt that the entire left side of his body was in muscle spasms and then later felt "lazy." (*Id.*) He feels he should have gone to the hospital but instead nothing was done, and it took three weeks before he regained control of walking, eating, and using his left arm.

The plaintiff alleges that he was "ordered knee and shoulder injections" but "they" gave him one shot in his knee but never followed up with injections to his shoulder or additional knee injections. (ECF No. 1, at 5.) He states that he has a degenerated lumbar spine with bulging discs at L4 and L5 and deterioration at L3. He has requested pain medications repeatedly but "they" only gave him Tylenol, which he asserts is not good for his heart, Tramadol, Mobic (which he also claims is not good for his heart), and aspirin. (*Id.*) He has had congestive heart failure but "they" gave him nitroglycerin only once. (*Id.* at 6.) In addition, "they" changed his heart medication from what his doctor had prescribed (potassium and metropolol) and in its place gave him Mobic.

He complains that he had bloodwork done to check liver and kidney function. The first test results were "abnormal" but "they" have not sent him to the hospital for follow-up. He claims he had kidney failure after the first blood test but "they" told him to "drink water and lay down." (*Id.* at 5.) He had severe pain for three days, but it eventually went away. His blood was tested a second time but he has not received those results.

Finally, the plaintiff complains that he has requested copies of his medical records but "they" have refused his requests.

He seeks compensation in the form of damages for pain and suffering, and asserts that he "could have died a couple times." (ECF No. 1, at 6.)

The plaintiff attaches to his complaint copies of grievances and a summary of his medical care both before and after going to jail in June 2014. These notes reflect two to three medical visits per month even after the plaintiff was in jail, that the plaintiff was depressed at the end of August from being served divorce papers and from the stress of his medical ailments; in early September he requested stopping all medical treatments and care; and a few days later eight medications had been ordered to address chronic pain, hypertension, chronic heart failure, and automatic implantable cardiac defibrillator. (ECF No. 1, at 14–15.)

### III. Discussion

The plaintiff seeks to bring suit under 42 U.S.C. § 1983. Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color

of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

Based on the factual allegations in the complaint, it appears that the plaintiff seeks to state a claim for violation of his rights under the Eighth or Fourteenth Amendment (depending upon whether he is a pretrial detainee or has been convicted of a crime) based on the alleged failure by prison officials and medical personnel to provide adequate medical care. The Eighth Amendment, by its terms, prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. In its application by the courts, the Eighth Amendment has been specifically construed to prohibit the "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and to impose affirmative duties on prison officials to "assume some responsibility for [each prisoner's] safety and general well-being," and to "provide for his basic human needs," including medical care. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989).

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court concluded that, although accidental or inadvertent failure to provide adequate medical care to a prisoner would not violate the Eighth Amendment, "deliberate indifference to the serious medical needs of prisoners" violates the Eighth Amendment, because it constitutes the "unnecessary and wanton infliction of pain" contrary to contemporary standards of decency. *Id.* at 104. The Supreme Court has clarified that the question of whether a prisoner's claim based on prison officials' failure to provide adequate medical care involves both a subjective and an objective component: The objective prong asks whether the harm inflicted by the conduct is sufficiently "serious" to warrant Eighth Amendment protection. *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992). The Sixth Circuit has defined a "serious medical need" as "either one that has been diagnosed by a

physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 570 (6th Cir. 2013) (quotation marks and citations omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

To establish the subjective component of an Eighth Amendment *Estelle* violation, a prisoner must plead facts showing that "prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir.1976). A defendant's state of mind is sufficiently culpable to satisfy the subjective component of an Eighth Amendment claim when it amounts to a reckless disregard of a substantial risk of serious harm; behavior that is merely negligent will not suffice. *Farmer*, 511 U.S. at 835–36. Consequently, allegations of medical malpractice or negligent diagnosis and treatment fail to state an Eighth Amendment claim of cruel and unusual punishment. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Thus, when a prisoner has received some medical attention but disputes the adequacy of that treatment, the federal courts are generally reluctant to second-

guess the medical judgments of prison officials and thus to constitutionalize claims which sound in state tort law. *Westlake*, 537 F.2d at 860 n.5. The Sixth Circuit has also recognized that "in some cases the medical attention rendered may be so woefully inadequate as to amount to no treatment at all." *Id.*

In this case, the plaintiff's allegations and the attachments to his complaint also show that he has received medical treatment at the jail, but he disputes the course and adequacy of that treatment. This is precisely the arena in which federal courts are reluctant to tread. The Court finds that the allegations in the complaint, which the Court presumes to be true at this stage, fail to establish deliberate indifference to the plaintiff's serious medical needs.

Moreover, even if the plaintiff alleged facts supporting a violation of his constitutional rights, he has not established that the named defendants are responsible for such conduct. In fact, while the plaintiff vaguely asserts in his complaint that unidentified individuals ("they") have provided the allegedly inadequate care, and he does not name as defendants the individuals responsible for his medical care. Instead, he names the Davidson County Sheriff's Office and "C.C.S. Medical," which likely refers to Correct Care Solutions, the entity contracted to provide medical services to the Davidson County jail population.

The Davidson County Sheriff's Office is not an entity that is subject to liability under § 1983. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *see also Mathes v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:10-cv-0496, 2010 WL 3341889, at *2, *3 (M.D. Tenn. Aug. 25, 2010) (noting that "since *Matthews*, federal district courts in Tennessee have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit"). The claims against the Davidson County Sheriff's Office are subject to dismissal on that basis.

Even if the claims against the Sheriff's Office are broadly construed as being asserted against Metropolitan Nashville and Davidson County ("Metro"), of which the Sheriff's Office is a division, a local government like Metro is responsible only for its own illegal acts. It is not vicariously liable under § 1983 for its employees' actions. *Connick v. Thompson*, 563 U.S. ----, 131 S. Ct. 1350, 1359 (2011) (internal citation and quotation marks omitted). A municipality is liable under § 1983 only if the challenged conduct occurs pursuant to a municipality's policy or custom such that the municipality's execution of the policy can be said to have "cause[d]" one of its employees to violate the plaintiff's constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 692 (1978). In this case, the plaintiff does not allege the existence of a policy or custom on the party of Metro (or the Sheriff's Office itself) that caused his injuries.

Correct Care Solutions, a private corporation, is an entity that may be subject to liability under § 1983. *See West v. Atkins*, 487 U.S. 42, 56 (1988) (holding that a private medical provider contracted to provide medical care to prisoners is a state actor for purposes of § 1983). Under Sixth Circuit law, however, private corporations, like municipal entities, are not subject to liability on the basis of *respondeat superior*. Rather, a private entity can be held responsible for an alleged constitutional deprivation only if there is a direct causal link between a policy or custom of the entity and the alleged constitutional violation. *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) ("Like a municipality, a government contractor cannot be held liable on a respondeat superior theory. . . . [A] private contractor is liable for a policy or custom of that private contractor. . . .").[1] The plaintiff here does not allege the existence of a policy or custom

---

[1] This is the law in the Sixth Circuit and every other circuit that has addressed the issue, but a panel of the Seventh Circuit has recently observed that the matter is deserving of "fresh consideration." *Shields v. Ill. Dep't of Corrs.*, 746 F.3d 782, 789 (7th Cir. 2014). That court noted that the Supreme Court has never directly considered the question of whether *Monell* applies to private corporations, and that "there are substantial grounds to question the extension

on the part of CCS that led to the denial of adequate care. Instead, he alleges that unidentified individuals ("they") employed by CCS provided him with substandard care. The Court therefore finds that the complaint fails to state a claim against CCS for which relief may be provided.

## IV.     Conclusion

The plaintiff's complaint will be dismissed for failure to state a claim for which relief may be granted, on the grounds that the plaintiff fails to establish the violation of his constitutional rights or, even if he did, that the named defendants are responsible for any alleged violation.

An appropriate order is filed herewith.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

of the *Monell* holding for municipalities to private corporations." *Id.* at 790. Specifically, "[i]nsulating private corporations from *respondeat superior* liability significantly reduces their incentives to control their employees' tortious behavior and to ensure respect for prisoners' rights. The results of the current legal approach are increased profits for the corporation and substandard services both for prisoners and the public." *Id.* at 794.